**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 25-2987 |
| *Plaintiff - Appellee*, | |
| v. | D.C. No. 4:23-cr-00318-AMO-1 |
| DARNEKO YATES, | |
| *Defendant - Appellant*. | OPINION |

Appeal from the United States District Court
for the Northern District of California
Araceli Martinez-Olguin, District Judge, Presiding

Argued and Submitted April 15, 2026
San Francisco, California

Filed July 29, 2026

Before: Johnnie B. Rawlinson, Ryan D. Nelson, and
Bridget S. Bade, Circuit Judges.

Opinion by Judge R. Nelson

# SUMMARY[*]

## Criminal Law

The panel affirmed the sentence imposed on Darneko Yates following a stipulated-facts bench trial at which the district court found Yates guilty of possessing a firearm as a felon in violation of 18 U.S.C. § 922(g)(1).

At sentencing, the district court applied a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a). The government declined to move for an extra one-point reduction under U.S.S.G. § 3E1.1(b) because it still had to allocate its resources to preparing for trial. The district court acknowledged it could not award the extra one-point reduction without a government motion.

The panel held that the government was within its discretion to decline to move for an additional one-level reduction under U.S.S.G. § 3E1.1(b).

- In the PROTECT Act of 2003, Congress gave the government the authority to determine whether the defendant's acceptance of responsibility supports the extra one-point reduction. To reinforce its decision to shift authority from the district courts to the government, Congress amended Application Note 6 to § 3E1.1 to read: "Because the Government is in the best position to determine whether the defendant has assisted authorities in a manner that avoids preparing for trial, an adjustment under subsection

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

(b) may only be granted upon a formal motion by the Government at the time of sentencing."

- The panel held that *United States v. Espinoza-Cano*, 456 F.3d 1126 (9th Cir. 2006) (explaining that even if it were to equate a stipulated bench trial with an outright guilty plea, the government still would not be compelled to file a § 3E1.1(b) motion), and *United States v. Johnson*, 581 F.3d 994 (9th Cir. 2009) (holding that the allocation and expenditure of prosecutorial resources for the purposes of defending an appeal is a rational basis for declining to move for the third-point reduction point), remain good law following Sentencing Guidelines Amendment 775 (2013), which conflicts with the PROTECT Act and was deleted in 2023, and Amendment 820 (2023), which added language defining "preparing for trial." Those decisions—and the plain language and statutory history of the PROTECT Act—confirm that Congress intentionally gave the government extremely broad discretion to decide whether to move for the extra reduction under § 3E1.1(b).

- The government properly exercised its discretion not to file a motion under § 3E1.1(b) in this case. The government's stated basis for declining—the need to allocate their resources to staff the case, prepare for trial, and conduct the trial—was neither arbitrary nor unconstitutional. The district court did not err in stating that it lacked authority to compel the government to move for the extra-point reduction.

The district court also applied a four-level enhancement under U.S.S.G. § 2K2.1(b)(7)(B) for possessing the firearm

in connection with another felony offense—child endangerment under California Penal Code § 273a(a). The panel held that the district court properly exercised its discretion under *United States v. Denton*, 611 F.3d 646 (9th Cir. 2010), to decide that Yates's conduct was felonious, and properly applied the enhancement. *Denton* held, in the context of supervised release violations and U.S.S.G. § 7B1.1(a), that the presumption that a charged offense under a wobbler statute is a felony (rather than a misdemeanor) does not apply to uncharged conduct, and that the district court must exercise its discretion to decide whether the offense was punishable by more than one year's imprisonment. The panel explained that *Denton*'s rationale applies with equal force to determine whether conduct constitutes a "felony offense" under § 2K2.1(b)(7)(B), and concluded that the district court's explanation on the record was sufficient to satisfy *Denton*'s requirements.

## COUNSEL

Ross D. Mazer (argued) and Richard I. Ewenstein, Assistant United States Attorneys; Merry Jean Chan, Chief, Appellate Section, Criminal Division; Craig H. Missakian, United States Attorney; Office of the United States Attorney, United States Department of Justice, San Francisco, California; for Plaintiff-Appellee.

Robin Packel (argued) and Samantha B. Jaffe, Assistant Federal Public Defenders; Jodi Linker, Federal Public Defender; Office of the Federal Defender, Oakland, California; for Defendant-Appellant.

# OPINION

R. NELSON, Circuit Judge:

Appellant Darneko Yates appeals his sentence and conviction for possessing a firearm as a felon in violation of 18 U.S.C. § 922(g)(1).  We affirm.

## I

## A

In August 2023—one month after being released on parole [1]—Darneko Yates was driving in San Pablo, California, with his five-year-old niece and six-year-old nephew in the backseat of the car.  When a police officer tried to stop Yates for an equipment violation, Yates continued driving for almost two blocks, eventually stopping in front of his mother's house.  The officer learned that Yates was on parole and asked Yates and the children to exit the vehicle to conduct a parole search.  As Yates's nephew exited the vehicle, the officer observed an object protruding from the child's pants, patted him down, and felt a firearm.  The officer located a Glock 23 pistol, loaded with 11 rounds of .40 caliber ammunition.  The pistol was equipped with an illegal "Glock switch," which enables the firearm to fire fully automatically.

The officer arrested Yates and seized his phone.  Officers later located a text message on Yates's phone—sent during the traffic stop—in which Yates texted his mother to "come

---

[1] In 2013, a California state court sentenced Yates to ten years' imprisonment for felony carjacking and firearm offenses.  Shortly thereafter, Yates received another three-year sentence for solicitation of murder, and he was paroled in July 2023.

get [the child] out da car he got my gun on em." Officers also located another text message that Yates sent 31 seconds later stating, "hurry up b4 he pull me out." The Glock pistol was manufactured in Austria and purchased from an Arizona gun store by a different person in 2022. The ammunition was manufactured in Italy. A single pull of the trigger caused the pistol to fire multiple rounds, rendering it a machine gun. *See* 26 U.S.C. § 5845(b).

## B

A federal grand jury indicted Yates for possessing a firearm and ammunition as a felon in violation of 18 U.S.C. § 922(g)(1). Shortly thereafter, Yates moved to (1) dismiss the indictment under the Second Amendment and Commerce Clause and (2) to suppress the evidence under the Fourth Amendment, arguing that the officer unduly prolonged the traffic stop by asking about his parole status. The district court denied the motion to dismiss but granted the motion to suppress. While the government's interlocutory appeal was pending, we held in *United States v. Ramirez* that "asking someone about his parole status during a traffic stop does not offend the Fourth Amendment." 98 F.4th 1141, 1146 (9th Cir. 2024). Thus, we granted the government's motion for summary reversal of the suppression order and remanded. *United States v. Yates*, No. 24-176, 2024 WL 4890995, at *1 (9th Cir. Nov. 22, 2024).

On remand, Yates sought a conditional plea to preserve his pretrial motion to dismiss the indictment based on the Second Amendment and the Commerce Clause. The government declined to enter into a conditional plea agreement, so Yates requested a stipulated-facts bench trial. Defense counsel stated that this was to limit trial preparation

and that she would seek a three-level reduction at sentencing under United States Sentencing Guideline (U.S.S.G.) § 3E1.1 for acceptance of responsibility.  The parties prepared for trial by holding status conferences, proposing a pretrial schedule, filing exhibit and witness lists, filing stipulations and waivers, and moving for subpoenas to produce *Giglio* and *Henthorn* material.  *See generally Giglio v. United States*, 405 U.S. 150 (1972); *United States v. Henthorn*, 931 F.2d 29 (9th Cir. 1991).

In January 2025, the district court held a stipulated-facts bench trial.  The court found Yates guilty based on the stipulated testimony of two potential witnesses (the arresting officer and a federal agent), the parties' stipulations, and the seven exhibits the government entered into evidence during trial.

The United States Probation Office (USPO) prepared Yates's Presentence Investigation Report (PSR), which calculated a total offense level of 24 and a criminal history category of III, resulting in a Guidelines range of 63–78 months' imprisonment.  Yates's base offense level was 20 because he possessed a "firearm that is described in 26 U.S.C. § 5845(a)" (a machine gun) as "a prohibited person." U.S.S.G. § 2K2.1(a)(4)(B).  Yates's total offense level also included a four-level enhancement under U.S.S.G. § 2K2.1(b)(7)(B)[2] for possessing the firearm in connection with another felony offense—child endangerment under

---

[2] USPO and the district court applied the 2024 Guidelines in Yates's sentencing.  The relevant enhancement, previously codified at § 2K2.1(b)(6)(B), was moved to § 2K2.1(b)(7)(B) in the 2025 Guidelines.  Application Note 14 also became Application Note 13.  No substantive changes were made to the guideline or relevant application notes.  This opinion uses § 2K2.1(b)(7)(B) as the current version.

California Penal Code § 273a(a). USPO recommended that Yates receive no reduction for acceptance of responsibility under § 3E1.1 because he "put the government to its burden of proof at trial."

Yates requested a 33-month sentence and sought a two-level reduction for acceptance of responsibility under § 3E1.1(a), arguing that he went to trial only to preserve his constitutional challenges. He also asked the court to "consider varying one level to account for the third point he would have likely been given [under § 3E1.1(b)] with a conditional plea." He objected to the enhancement under § 2K2.1(b)(7)(B), arguing that the predicate—child endangerment under § 273a(a)—was a "wobbler" offense that could be charged either as a felony or a misdemeanor. Because the predicate offense was uncharged, he asserted that the court had discretion to classify it as a misdemeanor.

The government requested a 78-month sentence and declined to move for the extra one-point deduction under § 3E1.1(b), because it still had to "'allocate [its] resources'" to preparing for trial, "including by having a second attorney learn the case to be able to try it."

At Yates's sentencing hearing, the district court applied the two-level reduction under § 3E1.1(a) and said that it disagreed with the government and USPO that Yates should not receive the third point, but the court acknowledged that it could not award the extra one-point reduction without a government motion. As for § 2K2.1(b)(7)(B), the court rejected Yates's argument that § 273a(a)'s status as a wobbler led to ambiguity that should trigger the rule of lenity. The court concluded that, because child endangerment was a crime punishable by more than one year, it met the definition of "another felony offense" under

the Guidelines commentary. *See* § 2K2.1(b)(7)(B) & cmt. n.13(C). Alternatively, the court explained that even if it were required by *United States v. Denton*, 611 F.3d 646, 649 (9th Cir. 2010), "to put [it]self in the shoes of a State Court judge" in deciding whether to treat Yates's offense as a felony or misdemeanor, it "would impose a felony sentence for putting a loaded weapon on the person of a six year old."

After considering the 18 U.S.C. § 3553(a) factors, Yates's "lack of youthful guidance," Yates's "family ties" and "efforts at rehabilitation," and "the Court's inability to grant [Yates] the third point for acceptance of responsibility without the government's motion for it," the court imposed a downward-variance sentence of 46 months' imprisonment. Yates timely appealed.

II

The district court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291.

We review the constitutionality of a statute de novo. *United States v. Bartley*, 9 F.4th 1128, 1131 (9th Cir. 2021). We review the district court's legal interpretation of the Guidelines de novo and its application of the Guidelines to the facts for abuse of discretion. *United States v. Petrushkin*, 142 F.4th 1241, 1245 (9th Cir. 2025). We review the government's refusal to move for an additional one-level reduction under § 3E1.1(b) only to determine whether the decision was based on "an unconstitutional motive (e.g., racial discrimination)" or made "arbitrarily (i.e., for reasons not rationally related to any legitimate governmental interest)." *United States v. Espinoza-Cano*, 456 F.3d 1126, 1136 (9th Cir. 2006); *see also United States v. Johnson*, 581 F.3d 994, 1001 (9th Cir. 2009).

III

A

The government was within its discretion to decline to move for an additional one-level reduction under § 3E1.1(b). Because we have yet to substantively interpret § 3E1.1(b) following amendments to that guideline in 2013 and 2023, we do so here and affirm that our precedent remains good law.[3]

Section 3E1.1(a) provides that if a "defendant clearly demonstrates acceptance of responsibility for his offense," the district court should "decrease the offense level by 2 levels." Further, "upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently," the court should "decrease the offense level by 1 additional level." U.S.S.G. § 3E1.1(b) (2024); PROTECT Act, Pub. L. 108–21, § 401(g)(1), 117 Stat. 650, 671 (2003).

1

Section 3E1.1 was originally promulgated in 1987. *United States v. Adair*, 38 F.4th 341, 356 (3d Cir. 2022). In 1992, the Commission amended the guideline by adding

---

[3] Yates's constitutional challenges to § 922(g)(1) based on the Second Amendment and Commerce Clause are foreclosed by precedent. *United States v. Duarte*, 137 F.4th 743, 752 (9th Cir. 2025) (en banc); *United States v. Hanna*, 55 F.3d 1456, 1462 (9th Cir. 1995).

§ 3E1.1(b) to allow for an additional one-point reduction. *Id.* at 356–57.

The current version of § 3E1.1(b) is "the result of an unusual congressional amendment of the guideline in 2003." *United States v. Orona*, 118 F.4th 858, 864 (7th Cir. 2024). Before 2003, the district court determined whether a defendant was entitled to the extra one-point reduction. *Id.* "In the PROTECT Act of 2003, Congress took the uncommon step of amending the guidelines itself, giving *the government* the authority to determine whether the defendant's acceptance of responsibility supports the extra one-point offense-level reduction." *Id.* at 864–65 (citing PROTECT Act, § 401(g)(1)(A), 117 Stat. at 671). The PROTECT Act thus "materially altered § 3E1.1(b)." *Johnson*, 581 F.3d at 1005.

To reinforce its decision to shift authority from the district courts to the government, Congress amended Application Note 6 to § 3E1.1 to read: "Because the Government is in the best position to determine whether the defendant has assisted authorities in a manner that avoids preparing for trial, an adjustment under subsection (b) may only be granted upon a formal motion by the Government at the time of sentencing." PROTECT Act, § 401(g)(2)(B), 117 Stat. at 672. Congress sought to preserve these amendments from future modification by the Sentencing Commission by expressly mandating that "[a]t no time may the Commission promulgate any amendment that would alter or repeal the amendments made by subsection (g) of this section." *Id.* § 401(j)(4), 117 Stat. at 673.

"With authority over the third acceptance-of-responsibility point now firmly in the government's hands, courts were faced with questions about the scope of the

prosecutor's discretion." *Orona*, 118 F.4th at 865. We held in *Espinoza-Cano* that the government "cannot refuse to file a motion on the basis of an unconstitutional motive (e.g., racial discrimination) or arbitrarily." 456 F.3d at 1136 (cleaned up). We reasoned that, because the language in § 3E1.1(b) and § 5K1.1 is similar, the "principle of consistent statutory construction for similar language provides initial support" for the conclusion that prosecutors should have the same discretion whether to file motions under § 3E1.1(b) as for substantial-assistance motions under § 5K1.1. *Id.* at 1135. We also looked to Congress's language in Application Note 6, concluding that it "reflects common sense" and "amounts to a de facto presumption that the government possesses superior knowledge of its trial preparation status" that in turn requires a defendant "to show unconstitutional motive, or arbitrary governmental action." *Id.* at 1136.

*Espinoza-Cano* reaffirmed that "there is nothing improper about the government providing an incentive to plea bargain." *Id.* at 1138. "Even if [this court] were to equate a stipulated bench trial with an outright guilty plea, the government still would not be compelled to file" a § 3E1.1(b) motion because there are "rational reasons for the government to prefer an outright guilty plea to a stipulated bench trial"—including not "expending resources[,] [and] anticipating, and ultimately defending, a complete appeal." *Id.* (cleaned up). In short, "the PROTECT Act makes the third level reduction subject to the discretion of the government, rather than mandatory, upon a timely plea of guilty." *Id.* at 1137.

A few years later, we held in *Johnson* that "the allocation and expenditure of prosecutorial resources for the purposes of defending an appeal is a rational basis for declining to

move for the third reduction point." 581 F.3d at 1002. Johnson entered a conditional guilty plea, seeking to preserve his right to appeal the denial of a motion to suppress. *Id.* at 998. We agreed with the government that Johnson had not "accepted responsibility in a way that ensures the certainty of his just punishment in a timely manner." *Id.* at 1003 (quoting U.S.S.G. § 3E1.1, cmt. backg'd.). The government was within its discretion not to move for the extra reduction because "[a]voiding the expenditure of additional resources in anticipation of and defending against an appeal is a legitimate governmental interest." *Id.* (citation omitted).

We acknowledged "that the government's broad discretion . . . under § 3E1.1(b) might in some cases place defendants in a dilemma," but "the PROTECT Act expressly inserted consideration of the government's resources into the calculus." *Id.* at 1006. Under the post-PROTECT Act Guidelines, the government must elect to file a motion stating that the defendant's timely guilty plea not only permitted the government to avoid preparing for trial, "but also permitted *the government* and the court to allocate their resources efficiently." *Id.* (cleaned up). "Both of these changes are significant." *Id*. Ultimately, "Johnson elected to bring his suppression argument to us, delaying finality of this criminal prosecution and causing the government to allocate and expend substantial additional resources to defend this appeal." *Id.* at 1007. Therefore, the district court "correctly concluded that the government acted within its discretion when it refused to file a § 3E1.1(b) motion." *Id.*

### 2

In 2013, the Sentencing Commission adopted Amendment 775 to the Guidelines, adding the following to

Application Note 6 to § 3E1.1: "The government should not withhold a [§ 3E1.1(b)] motion based on interests not identified in § 3E1.1, such as whether the defendant agrees to waive his or her right to appeal."  U.S.S.G. supp. to app. C, amend. 775 (Nov. 1, 2013) (codified at U.S.S.G. § 3E1.1, cmt. n.6, deleted by U.S.S.G. supp. to app. C, amend. 820 (Nov. 1, 2023)); *see also Orona*, 118 F.4th at 866.  The Commission intended the amendment to resolve a circuit split over whether the government may withhold a motion based on interests not identified in § 3E1.1.  *See Orona*, 118 F.4th at 866–67.

In *United States v. Sahagun-Gallegos*, we vacated and remanded—considering Amendment 775—so the district court could assess whether the defendant should receive a third point for acceptance of responsibility.  782 F.3d 1094, 1097 (9th Cir. 2015).  The PSR stated that the government "would have moved for a third-level reduction if Sahagun-Gallegos had waived his appeal rights."  *Id*.  And, because the amended application note stated that the motion should not be withheld "based on interests not identified in § 3E1.1, such as whether the defendant agrees to waive his or her right to appeal," we remanded.  *Id*. (quoting § 3E1.1, cmt. n.6 (2014)).  We also stated in a section heading that "[r]emand is required because the Government improperly withheld a motion for a third-level reduction for acceptance of responsibility."  *Id*.

But *Sahagun-Gallegos* relied on the adoption of Amendment 775.  And it does not abrogate our holdings in *Espinoza-Cano* or *Johnson* for two reasons.  First, we agree with the Third Circuit that "the commentary added by Amendment 775 has no force of law and is not controlling." *United States v. Adair*, 38 F.4th 341, 359 (3d Cir. 2022). Amendment 775 conflicts with the PROTECT Act, which

prohibited the Commission from altering Congress's amendments to § 3E1.1(b). *Id*. It also "exceed[ed] the Commission's delegated powers" by purporting "to govern the discretion of a cabinet-level agency—the Department of Justice and each of its prosecuting component agencies." *Id*.

Second, Amendment 775 is no longer in effect. The Commission adopted Amendment 820 to § 3E1.1 in 2023. U.S.S.G. supp. to app. C, amend. 820 (Nov. 1, 2023) (codified at § 3E1.1). Amendment 820 deleted the statement that Amendment 775 added to Application Note 6 ("The government should not withhold such a motion based on interests not identified in § 3E1.1, such as whether the defendant agrees to waive his or her right to appeal."). *Id*. Amendment 820 also added language to the guideline itself defining "preparing for trial." *Id*. In a tacit acknowledgment that Amendment 775 was improvident, the Commission recognized that Amendment 820 "involve[s] guideline and commentary provisions that Congress directly amended, and that Congress also directed the Commission not to 'alter or repeal' the congressional amendments." *Id*. "In recognition of this limitation, the amendment defines a term that the congressional amendments did not define—'preparing for trial'—without altering or repealing the amendments that Congress made." *Id*. Amendment 820 was intended "to decrease variation between jurisdictions in applying § 3E1.1(b)." *Id*. (describing multiple circuit splits over § 3E1.1(b)); *see also Longoria v. United States*, 141 S. Ct. 978, 979 (2021) (statement of Sotomayor, J., with whom Gorsuch, J., joins, respecting the denial of certiorari) (emphasizing "the need for clarification" on the "important and longstanding split among the Courts of Appeals over the proper interpretation of § 3E1.1(b)").

Even assuming the Commission's definition of "preparing for trial" is the best reading of that phrase as used in the PROTECT Act, it still would not abrogate our prior holdings. As we observed in *Johnson*, "the PROTECT Act expressly inserted consideration of the government's resources into the calculus," including resources that would be expended "in anticipation of and defending against an appeal." 581 F.3d at 1003, 1006–07. And as we noted in *Espinoza-Cano*, the PROTECT Act's language providing for a downward departure "upon motion of the government," PROTECT Act, § 401(g)(1)(A), 117 Stat. at 671, vests the government "with broad discretion to determine when the adjustment is appropriate," and this discretion may be leveraged to provide a defendant with an incentive to waive his right to an appeal. 456 F.3d at 1135, 1137–38. Those two features do not depend on the meaning of "preparing for trial," and thus Amendment 820 supplies no basis to depart from these holdings. *Espinoza-Cano* and *Johnson* are still good law. Those decisions—and the plain language and statutory history of the PROTECT Act—confirm that Congress intentionally gave the government extremely broad discretion to decide whether to move for the extra reduction under § 3E1.1(b).[4]

---

[4] Other circuits that have examined the post-2023 version of § 3E1.1(b) agree with this conclusion. *See United States v. Donath*, 107 F.4th 830, 839 (8th Cir. 2024) ("[3E1.1(b)] permits, but never requires, the government to move for an additional one-level reduction . . . . A court may compel a government motion for a three-level decrease, contrary to the plain language of Application Note 6, only if the government's decision not to move is based on an unconstitutional motive or irrational."); *United States v. Melega*, 173 F.4th 907, 915 (7th Cir. 2026) ("A defendant may only receive a three-point reduction under § 3E1.1(b) if the government files a motion stating that the defendant has timely assisted authorities to warrant the reduction.").

3

Having determined that *Espinoza-Cano* and *Johnson* remain good law following the 2023 Amendment to § 3E1.1(b), we now turn to Yates's case.

The government properly exercised its discretion not to file a motion under § 3E1.1(b). The government declined to move for the extra point because, "although the trial was limited in scope, the government was not able to avoid preparing for trial and still had to allocate its resources to that trial, including by having a second attorney learn the case to be able to try it." The government engaged in ordinary pretrial tasks such as participating in conferences and scheduling, meeting with potential witnesses, filing witness and exhibit lists, negotiating and filing joint stipulations, and addressing *Giglio* and *Henthorn* disclosures. Even under the Sentencing Commission's narrow definition of "preparing for trial," these tasks would qualify. *See* U.S.S.G. supp. to app. C, amend. 820 ("'Preparing for trial' is ordinarily indicated by actions taken close to trial, such as preparing witnesses for trial, in limine motions, proposed voir dire questions and jury instructions, and witness and exhibit lists."). And, of course, the parties conducted a bench trial that included opening and closing statements and the introduction of video exhibits, photos, court records, and stipulations. Accordingly, the government's stated basis for declining to file a § 3E1.1(b) motion—the need "to allocate their resources" to staff the case, "prepar[e] for trial," and conduct the trial—was neither arbitrary nor unconstitutional. PROTECT Act, § 401(g)(1)(B), 117 Stat. at 671; *see Espinoza-Cano*, 456 F.3d at 1136.

Yates argues that the government's preparations were insufficiently "substantive" and that the "stipulated-testimony bench trial that the government agreed to as an alternative to the conditional guilty plea it rejected was, effectively, a guilty plea." Except it was not a guilty plea. It was a bench trial. And "proceeding by way of a stipulated bench trial is inconsistent with notifying authorities of an intent to plead guilty." *Espinoza-Cano*, 456 F.3d at 1136.

Yates also argues that the government had to move for the extra point "because its minimal stipulated-testimony bench-trial preparations arose solely from its own choices," i.e., the decision not to accept his conditional plea, and those preparations were not that difficult or time-consuming. But even assuming that Yates's proffer of a conditional plea "satisfie[s] the prerequisite of permitting the government to avoid trial preparation," that is merely a necessary condition for a reduction under § 3E1.1(b), not a sufficient one. *Espinoza-Cano*, 456 F.3d at 1136; *Johnson*, 581 F.3d at 1005. For Yates to be entitled to a reduction under § 3E1.1(b) as of right, it must also be shown that his actions "permit[ted] the government and the court to allocate their resources efficiently." PROTECT Act, § 401(g)(1)(B), 117 Stat. at 671. And here, it is apparent from the record that the government refused to consent in furtherance of its legitimate interest in "[a]voiding the expenditure of additional resources in anticipation of and defending against an appeal." *Johnson*, 581 F.3d at 1003.

Finally, Yates argues that the district court erred by stating that, although it believed the extra point was warranted, it lacked authority to compel the government to move for it. But the district court's statement was legally correct. A court may compel the award of the added point only if the government's refusal was either "animated by an

unconstitutional motive" or "arbitrary." *Johnson*, 581 F.3d at 1001. Yates bore the burden to make that showing, *see id.*, but never argued that the government's refusal was arbitrary or unconstitutional. Nor did he articulate that the district court could impose the third point sua sponte. He merely asked that the court "consider varying one level to encompass the third acceptance point." The district court did not err.

## B

The district court properly applied the four-level enhancement under § 2K2.1(b)(7)(B) because Yates possessed a firearm in connection with another felony offense. Despite being a wobbler offense, child endangerment under California Penal Code § 273a(a) qualifies as "another felony offense" under § 2K2.1(b)(7)(B) here because the district court properly exercised its discretion to decide that Yates's conduct was felonious. *See United States v. Denton*, 611 F.3d 646, 649 (9th Cir. 2010).

Section 2K2.1(b)(7)(B) increases the offense level by four levels if the defendant "used or possessed any firearm or ammunition in connection with another felony offense."

In California, some criminal offenses, known as "wobblers," may be classified as either misdemeanors or felonies. *Ewing v. California*, 538 U.S. 11, 16–17 (2003). Because wobblers are "a special class of crimes involving conduct that varies widely in its level of seriousness," they "are chargeable or, in the discretion of the court, punishable as either a felony *or* a misdemeanor." *People v. Park*, 299 P.3d 1263, 1266 (Cal. 2013). "Under California law, a wobbler is presumptively a felony and remains a felony except when the discretion is actually exercised to make the crime a misdemeanor." *Ewing*, 538 U.S. at 16 (cleaned up).

Generally, "a wobbler is deemed a felony for all purposes until the court actually imposes a sentence other than commitment to state prison." *Park*, 299 P.3d at 1268.

But in *Denton*, we examined "whether a defendant's uncharged conduct, which would be chargeable as a wobbler offense . . . is presumptively a felony, punishable by more than one year in prison, for the purposes of calculating whether the defendant committed a Grade A, B, or C violation of his supervised release." 611 F.3d at 649. We held that—at least in the context of supervised release violations and U.S.S.G. § 7B1.1(a)—"the presumption that a charged offense under a wobbler statute is a felony does not apply to *uncharged* conduct." *Id.* We explained that "[b]ecause no presumption applies, the district court must exercise its discretion to decide whether the offense was punishable by more than one year's imprisonment." *Id.* at 652. To do so, "the district court should determine whether a trial court would have imposed a punishment other than imprisonment in a state prison" by looking to the factors identified in *People v. Superior Court (Alvarez)*, 928 P.2d 1171, 1177 (Cal. 1997). *Denton*, 611 F.3d at 652 (cleaned up). Those factors are the nature and circumstances of the offense, the defendant's attitude toward the offense, the defendant's character, and the objectives of sentencing. *Id.*

*Denton*'s rationale applies with equal force to determine whether uncharged wobbler conduct constitutes a "felony offense" under § 2K2.1(b)(7)(B). When a defendant uses or possesses a firearm in connection with "a wobbler offense, but the offense is uncharged, no presumption applies as to whether the offense is punishable as a felony (more than one year's imprisonment) or a misdemeanor (less than one year's imprisonment)." *Denton*, 611 F.3d at 652. Consistent with *Denton*, "the district court must exercise its discretion to

decide whether the offense was punishable by more than one year's imprisonment." *Id*. But the district court need not say any magic words or take an overly formulaic approach. It simply must determine whether a state trial court likely would have punished the offense as a misdemeanor or a felony. *See id*. To do so, the district court should examine the *Alvarez* factors, including the nature and circumstances of the offense, the defendant's attitude towards the offense, the defendant's character, and the objectives of sentencing. *See id.*; *Alvarez*, 928 P.2d at 1177.

This conclusion is consistent with the commentary, which defines a felony offense for purposes of this enhancement as "any federal, state, or local offense . . . punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." U.S.S.G. § 2K2.1, cmt. n.13(C). In many cases, the parties, USPO, and the district court can easily ascertain whether criminal conduct will be punishable by more than one year in prison "regardless of whether a criminal charge was brought." *Id*. Consider a felon who possesses a firearm in California while stealing a car, robbing a convenience store, committing a rape, or possessing methamphetamine. Those crimes are easy. All are straight felonies punishable by over a year in prison. *See* Cal. Penal Code §§ 215 (carjacking), 211 (robbery), 261 (rape); Cal. Health & Safety Code § 11370.1(a) (possession of controlled substances while armed).

But wobbler offenses are different. The court cannot know for certain whether a wobbler offense will be punishable by imprisonment for a term exceeding one year until the defendant is arrested and charged. If the defendant were arrested and charged with a misdemeanor offense from

the outset, the offense would not be punishable by over a year in prison and therefore would not qualify as "another felony offense" under § 2K2.1(b)(7)(B).

In other words, with *uncharged* wobbler conduct, the district court cannot say whether the offense is a misdemeanor or felony without exercising its discretion. Thus, the *Denton* approach applies equally here.

The district court appropriately exercised its discretion under *Denton*. Acknowledging that "the state of the law" was uncertain and "generally dissatisfying," the district court assigned dispositive weight to the definition of "another felony offense" in § 2K2.1, cmt. n.13(C), and found that § 273(a) "is a crime punishable by a term exceeding one year, and for that reason the guideline applies." But the court explained in the alternative that "[a]ssuming . . . *Denton* requires me to put myself in the shoes of a State Court judge, in that scenario I would impose a felony sentence for putting a loaded weapon on the person of a six year old." The district court elaborated that if "*Denton* requires that I exercise my discretion to apply the *Alvarez* factors and decide how I would sentence Mr. Yates for that offense, then it's a felony."

Yates argues that "the district court's lip-service towards the necessary *Alvarez* analysis is insufficient to uphold" the sentence. We disagree with this characterization of the district court's ruling.

First, "[t]he district court need not tick off each of the . . . factors to show that it has considered them." *United States v. Carty*, 520 F.3d 984, 992 (9th Cir. 2008) (en banc) (discussing analysis under § 3553(a)). Here, the district court identified the factor that it found dispositive: the nature and circumstances of Yates's offense. *See Alvarez*, 928 P.2d

at 1177. Given the egregious nature of Yates's conduct and Yates's failure to argue below that any other factor weighed in his favor, it was not an abuse of discretion for the district court to rest on this factor alone. *Cf. Carty*, 520 F.3d at 991 ("[T]he district judge is not obliged to raise every possibly relevant issue *sua sponte*.").

Second, it is clear from the record that the district court considered the substance of the other *Alvarez* factors. *Cf. United States v. Trujillo*, 713 F.3d 1003, 1009 (9th Cir. 2013) ("[I]t may be clear from the court's experience and consideration of the record that the factors were properly taken into account."); *United States v. Taylor*, 153 F.4th 934, 941 (9th Cir. 2025) ("Adequate explanation in some cases may be inferred from the PSR or the record as a whole." (cleaned up)). The district court addressed the § 3553(a) factors—which significantly overlap with the *Alvarez* factors—in detail. So did the government in its supplemental sentencing memo, which the court confirmed having reviewed. And, as Yates acknowledges, the court had received defense exhibits and mitigating evidence speaking to his "appreciation of and attitude toward the offense" and his "traits of character as evidenced by his behavior and demeanor." *Denton*, 611 F.3d at 652. The court also said that before sentencing it had "reviewed the Presentence Report, the parties' briefs and all of the exhibits that [defense] counsel submitted." Taken together, the court's invocation of the *Alvarez* factors, explanation of how it would exercise its discretion under *Denton*, discussion of various factors on the record, and consideration of all relevant filings and exhibits are more than enough to uphold Yates's sentence under *Denton*.

In sum, the district court's explanation on the record was sufficient to satisfy *Denton*'s requirements. The district

court correctly concluded that Yates possessed a firearm in connection with "another felony offense" and properly applied the enhancement.

## IV

*Espinoza-Cano* and *Johnson* remain good law following the 2023 Guidelines amendment. The government acted within its discretion when it declined to move for the extra one-level reduction. *See Espinoza-Cano*, 456 F.3d at 1136.

In addition, when a defendant possesses a firearm in connection with a wobbler offense, but the offense is uncharged, the district court must exercise its discretion to decide whether a state trial court would punish the offense as a felony or misdemeanor for purposes of determining whether it qualifies as "another felony offense" under § 2K2.1(b)(7)(B). *See Denton*, 611 F.3d at 652. The district court did so here.

**AFFIRMED.**